UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| D.K., a minor, by his parents, <br> PAUL and MELISSA KLEIN, <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 13-110 (RMC) |

## OPINION

Plaintiffs Paul and Melissa Klein, in their own right and on behalf of their minor son D.K., seek a preliminary injunction compelling the District of Columbia to maintain D.K.'s placement at the McLean School of Maryland pursuant to the "stay put" provision, 20 U.S.C. § 1415(j) of the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1400 *et seq*. Because the "stay put" provision does not apply, the motion will be denied.

## I. FACTS

### A. Statutory Framework

The Individuals with Disabilities Education Improvement Act of 2004 ("IDEA") ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). In designing a free appropriate public education ("FAPE") for students with disabilities, the child's parents, teachers, school officials, and other professionals collaborate in a "multi-disciplinary team" to develop an individualized educational program ("IEP") to meet the

1

child's unique needs. *See id.* § 1414(d)(1)(B). Local school officials utilize the IEP to assess the student's needs and assign a commensurate learning environment. *See id.* § 1414(d)(1)(A).

While the District of Columbia is required to provide disabled students a FAPE, it is not required to, and does not, guarantee any particular outcome or any particular level of academic success. *See Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982); *Dorros v. District of Columbia*, 510 F. Supp. 2d 97, 100 (D.D.C. 2007). If a parent objects to the identification, evaluation, or educational placement of a disabled child, or whether he is receiving a FAPE, *see* 20 U.S.C. § 1415(b)(6), the parent may seek an "impartial due process hearing" before a D.C. Hearing Officer, who issues a determination. *Id.* § 1415(f)(1)(A). If the parent is dissatisfied with the determination, he may appeal to a state court or a federal district court. *See id.* § 1415(i)(2)(A).

### B. Background

D.K. is a fifteen-year-old student who has been diagnosed with disabilities including Mixed Receptive-Expressive Language Disorder, Attention Deficit Hyperactivity Disorder, Learning Disorder, Pervasive Developmental Disorder, Anxiety Disorder, and stuttering. AR[1] at 10, 12. When he was ready to begin third grade at the beginning of the 2006-2007 school year, D.K.'s parents, Paul and Melissa Klein (Plaintiffs), unilaterally removed him from his neighborhood elementary school and enrolled him in the McLean School of Maryland (McLean), a private school. AR at 11, 61-62.

Plaintiffs then sought a due process hearing and an order requiring the District to pay for D.K.'s tuition at McLean. On May 9, 2007 a Hearing Officer found: D.K. was a student with special education needs; the District had denied D.K. a FAPE; and D.K. was making

---

[1] Pages 1-455 of the Administrative Record are filed at Docket 5, and pages 456-473 are

2

progress at McLean. AR at 59-69. Accordingly, the Hearing Officer determined that McLean was a proper placement since it offered "full-time special education in a modified general education environment," and ordered the District to fund D.K.'s education at McLean. AR at 67-68. D.K.'s placement setting was designated as "out of general education;" his parents did not object. AR at 11. The District complied and maintained D.K.'s placement at McLean through the end of the 2011-2012 school year.

The District did not monitor D.K.'s progress at McLean from 2007-2010. A.R. at 7. Then, in the spring of 2010, the District told Plaintiffs that D.K.'s IEP had expired and that updated evaluations were needed for a new IEP. AR at 7. Plaintiffs hired Dr. William Stixrud to evaluate D.K. He confirmed that D.K. is very bright with significant cognitive, academic, social, and emotional challenges. AR at 90. Dr. Stixrud recommended continued placement at McLean because D.K. would be in a small structured classroom and he would be exposed to a demanding academic curriculum and other bright students, while receiving necessary support. *Id*.

Plaintiffs forwarded the report and recommendation to the District in February 2011, but the District took no action. AR at 106, 121-24. In September 2011, Plaintiffs submitted a proposed IEP, developed by their educational consultant and staff at McLean. AR at 126-30. The District determined that it needed additional evaluations and it needed to speak to Dr. Stixrud about his evaluation. AR at 134-40.

In December 2011, a speech-language pathologist evaluated D.K. She determined that D.K. needed speech-language services in order to assist him with communication deficiencies and behavior support to help him with his anxiety and frustration over his inability to express himself easily. AR at 159-178. D.K.'s out of school therapist believes that D.K. has fluctuating anxiety related to auditory sensing and processing. AR at 16.

3

An IEP meeting was convened on March 1, 2012, and a multi-disciplinary team found that D.K. was eligible for services as a student with Multiple Disabilities. AR at 213-37. On March 15, 2012, another IEP meeting was held to review a draft IEP. At this meeting, the District informed D.K.'s parents that the school system would not be able to continue D.K.'s placement at McLean because it lacked the necessary Certificate of Approval from the Office of the State Superintendent of Education. AR at 14, 261. The District referred Plaintiffs to Kingsbury Day School and Harbour School, both private schools that provide full-time self-contained special education services to students with special education needs. AR at 276. The team agreed to reconvene several weeks later in order to permit Plaintiffs time to review the draft IEP.

Plaintiffs visited both Kingsbury and Harbour and concluded that their programs were not desirable because they served only disabled students and their curricula were not sufficiently rigorous. AR at 276. D.K. feared leaving his social relationships at McLean and was concerned about the noise level at Kingsbury. AR at 16, 536-37. In August 2012, the IEP team reconvened to finalize the IEP and placement for the 2012-2013 school year. AR at 292-93. The new IEP required D.K. to receive specialized instruction for 27.5 hours per week, speech and language services for one hour per week, and behavioral support services for 1 hour per week; each was required to be provided *outside* a general education setting. AR at 343. Despite Plaintiffs' insistence that these services be implemented at McLean, the IEP team issued a formal notice proposing to transfer D.K. to Kingsbury. AR at 298-99. D.K.'s parents rejected the proposed move and kept D.K. in school at McLean. AR at 302.

Plaintiffs requested a due process hearing, alleging that the District failed to propose a proper IEP and placement for D.K. AR at 8, 309-17. They contended that McLean is

an appropriate placement for D.K. because it offers a rigorous program and contact with nondisabled peers and that Kingsbury is an inappropriate placement because its academic programming is insufficiently rigorous and it offers contact only with peers who are disabled. AR at 8; *see also* AR at 535-39, 619-21.

A hearing was held on December 6 and 12, 2012. Evidence was presented showing that McLean is a general education school that provides special education to D.K. while giving him access to non-disabled peers. AR at 609-11. At McLean, class size is generally ten students. AR at 613. There is adult support on interaction with peers and students can leave the room when needed due to anxiety. AR at 611. Students are provided advanced class units to provide academic rigor, while providing modifications. *Id*. D.K. has made progress at McLean. AR at 820-21.

However, McLean is not a special education school, it does not implement IEP's, and it does not ensure compliance with the IEP process. AR at 19, 789. Instead, in the case of D.K., McLean uses a "learning profile" to address D.K.'s needs. AR at 819-20.[2] Further, McLean does not possess a Certificate of Approval from the Office of the State Superintendent of Education and it has not applied for one. AR at 798.

Kingsbury, in contrast, can implement D.K.'s IEP and has a Certificate of Approval. AR at 741-42. All teachers at Kingsbury are content certified or are certified in special education. AR at 19, 757. Class size is six to ten students, with one teacher and one aide per class room, and other service providers "push in" to the classroom to assist students during class time. AR at 722. The upper school has a special program for students who are academically and cognitively gifted, and advanced placement courses are being added. AR at

---

[2] The District employee who monitors placement of students in private schools testified that he was surprised to discover that McLean does not implement IEP's. AR at 789.

737, 762-71. Kingsbury uses various strategies to assist students with high levels of anxiety and/or sensitivity to sound, including headsets, earplugs, preferential seating, and designated "go-to" spaces. AR at 773-74.

On December 22, 2012, the Hearing Officer rendered a decision (1) finding that Plaintiffs failed to meet their burden of showing that the District denied D.K. a FAPE; (2) dismissing Plaintiffs' administrative complaint; and (3) denying Plaintiffs' request to continue D.K.'s placement at McLean. AR at 6-35. The Hearing Officer noted that the IEP called for full-time specialized education outside of the general education setting, and McLean is unwilling or unable to implement D.K.'s IEP. AR at 26. The Hearing Officer reasoned that because McLean had not implemented D.K.'s IEP, would not ensure that it would implement the IEP, and did not hold a current Certificate of Approval from the Office of the State Superintendent of Education, it was not an appropriate placement. AR at 26. The Hearing Officer concluded that the move from McLean to Kingsbury was merely a change in location and did not constitute a change in "educational placement" under the IDEA. AR at 26.

Shortly after the Hearing Officer rendered his decision, the District asked Plaintiffs if they would accept the proposed placement at Kingsbury. Mot. for Prelim. Inj. [Dkt. 8], Ex. A (12/27/12 email). Plaintiffs did not accept and instead maintained D.K.'s enrollment at McLean and filed this suit appealing the Hearing Officer's decision. The Complaint alleges (1) the District of Columbia denied D.K. a FAPE in violation of IDEA; (2) by refusing to continue D.K.'s placement at the McLean School of Maryland and recommending transfer to Kingsbury Day School, the Hearing Officer failed to order an appropriate educational placement; and (3) the Hearing Officer erred by dismissing Plaintiff's administrative claim with prejudice and

denying continued funding for D.K.'s attendance at McLean. The parties are currently briefing cross motions for summary judgment.

On June 6, 2013, the District sent a letter to Plaintiffs, noting that Plaintiffs had rejected the proposed FAPE by failing to enroll D.K. at Kingsbury and thus the school system planned to discharge D.K. and cease paying his tuition at McLean. *Id.*, Ex. B (6/6/13 letter). Plaintiffs have now filed a motion for preliminary injunction, seeking an order requiring the District to maintain D.K.'s placement at McLean pending a decision on the merits.[3]

## II. LEGAL STANDARD

The "stay put" section of the IDEA provides that "during the pendency of [administrative due process hearings under § 1415], the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). If the current educational placement is not available, the school system must place the child in a similar program. *Knight v. District of Columbia*, 877 F.2d 1025, 1029 (D.C. Cir. 1989). A parent may invoke the "stay put" provision when the school system proposes "a fundamental change in, or elimination of, a basic element of the education program." *Lunceford v. District of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984).

Because the "stay put" provision imposes an automatic statutory injunction, the traditional four-part test for an injunction does not apply. *Casey K. ex rel. Norman K. v St. Anne Cmty. High Sch. Dist.*, 400 F.3d 508, 511 (7th Cir. 2005); *Alston v District of Columbia*, 439 F. Supp. 2d 86, 91 (D.D.C. 2006); *see also Andersen by Andersen v. District of Columbia*, 877 F.2d

---

[3] Although the parties have filed cross motions for summary judgment, the motions will not be ripe for decision until after the school year begins. Accordingly, the preliminary injunction motion will be decided now.

1018, 1024 (D.C. Cir. 1989) (noting that "stay put" motions before the district court do not need to meet the four-prong test, while "stay put" motions before the Circuit do).

### III. ANALYSIS

The parties hotly dispute whether the proposed change in location—from McLean to Kingsbury—constitutes a change in "educational placement." Plaintiffs assert that the location is a critical component of D.K.'s educational program; the District counters that the services provided under D.K.'s IEP have not fundamentally changed and the location where such service are delivered is not relevant.

The IDEA does not define "educational placement" and the interpretation of the phrase has been left to the courts. Courts have defined the term "educational placement" as meaning something "between the physical school attended by a child and the abstract goals of a child's IEP." *Laster v. District of Columbia*, 394 F. Supp. 2d 60, 64-65 (D.D.C. 2005) (citing *Bd. of Educ. of Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 548 (7th Cir. 1996)). The term means more than the physical school building that a child attends. The Fifth Circuit defined "educational placement" as a term of art meaning "educational program—not the particular institution where that program is implemented." *White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 379 (5th Cir. 2003). The Second Circuit agreed, noting that educational placement refers to "the classes, individualized attention and additional services a child will receive—rather than the 'bricks and mortar' of the specific school." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009). The D.C. Circuit has explained that if a parent cannot identify a fundamental change in, or elimination of, *a basic element of the education program*, there has been no change in "educational placement" and the stay put provision does not apply. *Lunceford*, 745 F.2d at 1582; *see also A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, 372 F.3d 674, 682 (4th Cir. 2004) ("educational placement" under the IDEA refers to the general

8

education program and environment, not to a location); *Johnson v. Disrict of Columbia*, 839 F. Supp. 2d 173, 178 (D.D.C. 2012) (physical placement and educational placement are not synonymous); Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities, 71 Fed. Reg. 46,540, 46,588-89 (Aug. 14, 2006) (codified at 34 C.F.R. Pts. 300 and 301) ("[M]aintaining a child's placement in an educational program that is *substantially and materially* similar to the former placement is not a change in placement." (emphasis added)).

The 2007 IEP set forth D.K.'s placement as "out of general education," AR at 11, and the 2012 IEP renewed this out of general education designation.[4] AR at 335-46. Plaintiffs have insisted that the services be implemented at McLean. They contend that placement of D.K. at Kingsbury instead of McLean constitutes a fundamental change in D.K.'s educational program because McLean offers general education in a mainstream high school while Kingsbury serves only disabled students.

The physical school location alone does not constitute an "educational placement." The key difference between McLean and Kingsbury identified by Plaintiffs is that McLean offers general education with access to non-disabled peers. However, this distinction is not relevant to D.K.'s IEP, as it requires all instruction and services to be provided *outside* a general education setting. As relevant to the requirements of D.K.'s IEP, Kingsbury and McLean are the same. They both offer small classes outside the general setting with individual instruction, strategies for dealing with noise, access to special services, and programs for advanced instruction. Because Plaintiffs have not pointed to a fundamental change in, or

---

[4] The "stay put" provision requires a child to remain in the "then-current educational placement." 20 U.S.C. § 1415(j). While the parties disagree whether the 2007 or the 2012 IEP sets forth the "then-current educational placement," this dispute is not material because *both* IEP's provide for "outside of general" education.

9

elimination of, any basic element of D.K.'s educational program as set forth in his IEP, a transfer from McLean to Kingsbury does not constitute a change in "educational placement," and the "stay put" provision does not apply. *See Lunceford*, 745 F.2d at 1582.

It is critical in this case to note that D.K.'s IEP *cannot* be implemented at McLean. The staff of McLean have indicated that the school is unable and/or unwilling to implement D.K.'s IEP. *See* AR at 789, 819-20. D.K. is entitled to a FAPE, and for a disabled student, a FAPE requires that services be provided in compliance with an IEP. *See* 20 U.S.C. § 1401(9). Because McLean cannot/will not implement D.K.'s IEP, McLean is not a proper placement under the IDEA.[5] *See Johnson*, 839 F. Supp. 2d at 179 (student may not be placed at a school that cannot provide the services required by the IEP; a school district may place a student at any facility that can provide the services defined in the student's IEP); D.C. Code § 38-2561.03(a) (a student with a disability may be placed only in a school that can implement the student's IEP). Further, the District may not agree to place D.K. at McLean because it lacks a valid Certificate of Approval. D.C. Code § 38-2561.03 (no special education student may be placed in a private school that lacks a valid Certificate of Approval in accordance with D.C. Code § 38-2561.07, unless a court orders such placement); 5-A D.C. Mun. Regs. § 2844.1 (same). As a result, McLean is not "available" as a location for placement to fulfill D.K.'s IEP. If the current educational placement is not available, the school system must place the child in a similar program, *see Knight*, 877 F.2d at 1029, and Kingsbury is such a program. Kingsbury is available, it can implement D.K.'s IEP, and it has a valid Certificate of Approval.

---

[5] It is unclear whether the staff at McLean are qualified to implement D.K.'s IEP. The District asked to review the certificates and qualifications for McLean's teachers, but McLean did not provide them. AR at 793-94. District employees sought to observe students at McLean (including D.K.) that are funded by the District, but McLean refused. AR at 18-19.

10

## IV.  CONCLUSION

For the reasons stated above, the Court will deny Plaintiffs' motion for preliminary injunction [Dkt. 8].  A memorializing Order accompanies this Opinion.

Date:  August 26, 2013                              /s/
                                         Rosemary M. Collyer
                                         U.S. District Judge