UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| D.K., a minor, by his parents, PAUL and MELISSA KLEIN, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 13-110 (RMC) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION

Paul and Melissa Klein, in their own right and on behalf of their minor child D.K., filed this appeal of a Hearing Officer Determination, alleging that the District of Columbia denied D.K. a free appropriate public education in violation of the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1400 *et seq.*, by refusing to continue D.K.'s placement at the McLean School of Maryland (McLean) and recommending transfer to Kingsbury Day School. The recommended move from Mclean to Kingsbury did not constitute a change in D.K.'s "educational placement" because this phrase is properly understood to mean an educational program and not a location. Accordingly, the District's motion for summary judgment will be granted, and Plaintiffs' cross motion will be denied.

## I. FACTS

### A. Statutory Framework

The Individuals with Disabilities Education Improvement Act of 2004 (IDEA) ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C.

1

§ 1400(d)(1)(A). In designing a free appropriate public education (FAPE) for students with disabilities, the child's parents, teachers, school officials, and other professionals collaborate in a "multi-disciplinary team" to develop an individualized educational program (IEP) to meet the child's unique needs. *See id.* § 1414(d)(1)(B). An IEP must include a statement of needs, services, learning aids, and programs that should be made available to the student. *Id.* § 1414(d). Local school officials utilize the IEP to assess the student's needs and assign a commensurate learning environment. *See id.* § 1414(d)(1)(A). "Once the IEP is developed, the school system must provide an appropriate placement that meets those needs and, if an appropriate public placement is unavailable, the school system must provide an appropriate private placement or make available educational-related services provided by private organizations to supplement a public placement. *Petties v. District of Columbia,* 238 F. Supp. 2d 114, 116 (D.D.C. 2002) (citing 20 U.S.C. § 1412(a)(10); 34 C.F.R. §§ 300.349, 300.400–402).

While the District of Columbia is required to provide disabled students a FAPE, it is not required to, and does not, guarantee any particular outcome or any particular level of academic success. *See Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982); *Dorros v. District of Columbia*, 510 F. Supp. 2d 97, 100 (D.D.C. 2007). If the parent objects to the identification, evaluation, or educational placement of a disabled child, or whether she is receiving a FAPE, 20 U.S.C. § 1415(b)(6), the parent may seek an "impartial due process hearing" before a D.C. Hearing Officer, who issues a Hearing Officer Determination (HOD). *Id.* § 1415(f)(1)(A). If the parent is dissatisfied with the HOD, she may appeal to a state court or a federal district court. *See id.* § 1415(i)(2)(A). Plaintiffs here are parents who are dissatisfied with an HOD, and they have filed this appeal.

**B. Facts**

D.K. is a fifteen-year-old student who has been diagnosed with disabilities including Mixed Receptive-Expressive Language Disorder, Attention Deficit Hyperactivity Disorder, Learning Disorder, Pervasive Developmental Disorder, Anxiety Disorder, and stuttering. AR[1] at 10, 12. When he was ready to begin third grade at the beginning of the 2006-2007 school year, D.K.'s parents, Paul and Melissa Klein (Plaintiffs), unilaterally removed him from his neighborhood elementary school and enrolled him in McLean, a private school. *Id.* at 11, 61-62. McLean offers "full-time individual instruction in a full-time mainstream setting." *Id*. at 385, 388.

Plaintiffs then sought a due process hearing and an order requiring the District to pay for D.K.'s tuition at McLean. On May 9, 2007 a Hearing Officer found: D.K. was a student with special education needs; the District had denied D.K. a FAPE; and D.K. was making progress at McLean. *Id.* at 59-69. D.K.'s placement setting was designated as "out of general education," and his parents did not object. *Id.* at 11. Despite the fact that D.K.'s placement was "*out of* general education" and McLean is not a special education school, the Hearing Officer determined that McLean was a proper placement and ordered the District to fund D.K.'s education at McLean. *Id.* at 67-68. As a result, the District, via its component District of Columbia Public School System (DCPS), maintained D.K.'s placement at McLean through the end of the 2011-2012 school year.[2]

DCPS did not monitor D.K.'s progress at McLean from 2007-2010. *Id*. at 7. Then, in the spring of 2010, the District told Plaintiffs that D.K.'s IEP had expired and that

---

[1] Pages 1-455 of the Administrative Record are filed at Docket 5, and pages 456-873 are filed at Docket 6.

[2] The record is unclear whether McLean ever actually met the terms of D.K.'s IEP, but this question is not at issue here.

3

updated evaluations were needed for a new IEP. *Id.* at 7. Plaintiffs hired Dr. William Stixrud to evaluate D.K. for the purpose of providing input for the new IEP. He confirmed that D.K. is very bright with significant cognitive, academic, social, and emotional challenges. *Id.* at 90. Dr. Stixrud recommended continued placement at McLean because, although D.K. would not be in a special education environment, he would be in a small, structured classroom, he would be exposed to a demanding academic curriculum and other bright students, and he would receive necessary support. *Id.*

Plaintiffs forwarded the report and recommendation to the District in February 2011, but the District took no action. *Id.* at 106, 121-24. In September 2011, Plaintiffs submitted a proposed IEP, developed by their educational consultant and staff at McLean. *Id.* at 126-30. The District determined that it needed additional evaluations and that it needed to speak to Dr. Stixrud about his evaluation. *Id.* at 134-40.

In December 2011, a DCPS speech-language pathologist evaluated D.K. She determined that D.K. needed speech-language services in order to assist him with communication deficiencies and behavior support to help him with his anxiety and frustration over his inability to express himself easily. *Id.* at 159-178. D.K.'s out-of-school therapist believes that D.K. has fluctuating anxiety related to his difficulty with auditory sensing and processing. *Id.* at 16.

An IEP meeting was convened on March 1, 2012, and a multi-disciplinary team found that D.K. was eligible for services as a student with Multiple Disabilities. *Id.* at 213-37. On March 15, 2012, another IEP meeting was held to review a draft IEP. At this meeting, the District informed D.K.'s parents that the school system would not be able to continue D.K.'s placement at McLean because it lacked the necessary Certificate of Approval from the D.C.

Office of the State Superintendent of Education. *Id.* at 14, 261. The District referred Plaintiffs to Kingsbury Day School and Harbour School, both private schools that provide full-time self-contained special education services to students with special education needs. *Id.* at 276. The team agreed to reconvene several weeks later to permit Plaintiffs time to review the draft IEP.

Plaintiffs visited both Kingsbury and Harbour and concluded that their programs were not desirable because they serve only disabled students and their curricula are not sufficiently rigorous. *Id.* at 276. D.K. feared leaving his social relationships at McLean and was concerned about the noise level at Kingsbury. *Id.* at 16, 536-37.

In August 2012, the multidisciplinary team reconvened to finalize the IEP and placement for the 2012-2013 school year. *Id.* at 292-93. The new IEP required D.K. to receive specialized instruction for 27.5 hours per week, speech and language services for one hour per week, and behavioral support services for 1 hour per week; each was required to be provided *outside* a general education setting. *Id.* at 343. Despite Plaintiffs' insistence that these services be implemented at McLean, the IEP team issued a formal notice proposing to transfer D.K. to Kingsbury. *Id.* at 298-99. D.K.'s parents rejected the proposed move and maintained D.K.'s enrollment at McLean. *Id.* at 302.

Plaintiffs requested a due process hearing, alleging that the District failed to propose a proper IEP and placement for D.K. *Id.* at 8, 309-17. They contended that McLean is an appropriate placement for D.K. because it offers a rigorous program and contact with nondisabled peers and that Kingsbury is an inappropriate placement because its academic programming is insufficiently rigorous and it offers contact only with peers who are disabled. *Id.* at 8; *see also id.* at 535-39, 619-21.

5

A hearing was held on December 6 and 12, 2012. Evidence was presented showing that McLean is a general education school that provides special education to D.K. while giving him access to non-disabled peers. *Id.* at 609-11. At McLean, class size is generally ten students. *Id.* at 613. There is adult support for interaction with peers, and students can leave the room when needed due to anxiety. *Id.* at 611. Students are provided advanced class units to provide academic rigor, while providing modifications. *Id*. D.K. has made progress at McLean. *Id.* at 820-21.

However, McLean is *not* a special education school; it offers "full-time individual instruction in a full-time mainstream setting." *Id*. at 385, 388. McLean does not implement IEP's, and it does not ensure compliance with the IEP process. *Id.* at 19, 789. Instead, in the case of D.K., McLean used a "learning profile" to address D.K.'s needs. *Id.* at 819-20.[3] It is not clear whether McLean cannot or will not implement IEPs, only that it *does not* implement IEPs. Further, McLean does not possess a Certificate of Approval from the D.C. Office of the State Superintendent of Education and has not applied for one. *Id.* at 798.

Kingsbury, in contrast, can and would implement D.K.'s IEP; it has a Certificate of Approval. *Id.* at 741-42. All teachers at Kingsbury are content-certified or are certified in special education. *Id.* at 19, 757. Class size is six to ten students, with one teacher and one aide per class room, and other service providers "push in" to the classroom to assist students during class time. *Id.* at 722. The upper school has a special program for students who are academically and cognitively gifted, and advanced placement courses are being added. *Id.* at 737, 762-71. Kingsbury uses various strategies to assist students with high levels of anxiety and/or sensitivity to sound, including headsets, earplugs, preferential seating, and designated

---

[3] The District employee who monitors placement of students in private schools testified that he was surprised to discover that McLean does not implement IEP's. AR at 789.

6

"go-to" spaces. *Id.* at 773-74. All students at Kingsbury are disabled and receive special education services. *Id*. at 725, 751.

On December 22, 2012, the Hearing Officer rendered a decision (1) finding that Plaintiffs failed to meet their burden of showing that the District denied D.K. a FAPE; (2) dismissing Plaintiffs' administrative complaint; and (3) denying Plaintiffs' request to continue D.K.'s placement at McLean. *Id.* at 6-35. The Hearing Officer noted that the IEP called for full-time specialized education outside of the general education setting, and McLean is unwilling and/or unable to implement D.K.'s IEP. *Id.* at 26. The Hearing Officer reasoned that because McLean had not implemented D.K.'s IEP, would not ensure that it would implement the IEP, and did not hold a current Certificate of Approval from the D.C. Office of the State Superintendent of Education, it was not an appropriate placement. *Id.* The Hearing Officer determined that the move from McLean to Kingsbury was merely a change in location and did not constitute a change in "educational placement" under the IDEA. *Id.*

Shortly after the Hearing Officer rendered his decision, the District asked Plaintiffs if they would accept the proposed placement at Kingsbury. Mot. for Prelim. Inj. [Dkt. 8], Ex. A (12/27/12 email). Plaintiffs did not accept and instead maintained D.K.'s enrollment at McLean. On January 25, 2013, Plaintiffs filed this suit appealing the Hearing Officer's December 2012 decision. The Complaint alleges (1) the District of Columbia denied D.K. a FAPE in violation of IDEA; (2) by refusing to continue D.K.'s placement at McLean and recommending transfer to Kingsbury Day School, the Hearing Officer failed to order an appropriate educational placement; and (3) the Hearing Officer erred by dismissing Plaintiff's administrative claim with prejudice and denying continued funding for D.K.'s attendance at McLean. *See* Compl. [Dkt. 1].

7

On June 6, 2013, the District sent a letter to Plaintiffs, indicating that because Plaintiffs had rejected the proposed FAPE by failing to enroll D.K. at Kingsbury, the school system would discharge D.K. and cease paying his tuition at McLean. *Id.*, Ex. B (6/6/13 letter). Plaintiffs sought a preliminary injunction for the purpose of requiring the District to maintain and fund D.K.'s placement at McLean during the pendency of this suit. Mot. for Prelim. Inj. [Dkt. 8]. On August 26, 2013, the Court denied the motion. Op. [Dkt. 14]; Order [Dkt. 15]. The parties now have fully briefed cross motions for summary judgment.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In evaluating a hearing officer's decision in an IDEA case such as this one, a court reviews the administrative record, may hear additional evidence, and bases its decision on the preponderance of the evidence, granting such relief as deemed appropriate. 20 U.S.C. § 1415(i)(2)(C). "Where, as here, neither party seeks to present additional evidence, a motion for summary judgment operates as a motion for judgment based on the evidence compromising the record." *Parker v. Friendship Edison Public Charter Sch.*, 577 F. Supp. 2d. 68, 72 (D.D.C. 2008) (internal quotation marks and citation omitted).

The burden of proof is with the party challenging the administrative determination, who must persuade the court that the hearing officer was wrong. *Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989) (internal quotation marks omitted)). While the court must make an independent determination, the court also should give "due weight" to the decision of the hearing

8

officer and should afford some deference to the expertise of the hearing officer and the school officials. *See Rowley*, 458 U.S. at 206; *Lyons v. Smith*, 829 F. Supp. 414, 419 (D.D.C. 1993).

### III. ANALYSIS

#### A. Educational Placement

The parties dispute whether the proposed change in location—from McLean to Kingsbury—constitutes a change in "educational placement." Plaintiffs assert that the location is a critical component of D.K.'s educational program; the District counters that the services provided under D.K.'s IEP have not fundamentally changed and the particular school where such services are delivered is not relevant.

The IDEA does not define "educational placement," and the interpretation of the phrase has been left to the courts. Courts have defined the term "educational placement" as meaning something "between the physical school attended by a child and the abstract goals of a child's IEP." *Laster v. District of Columbia*, 394 F. Supp. 2d 60, 64-65 (D.D.C. 2005) (citing *Bd. of Educ. of Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 548 (7th Cir. 1996)). Implying that the term means more than the physical school building that a child attends, the D.C. Circuit has explained that if a parent cannot identify a "fundamental change in, or elimination of[,] *a basic element of the education program*," there has been no change in "educational placement." *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984);[4] *see also* Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities, 71 Fed. Reg. 46,540, 46,588-89 (Aug. 14, 2006) (codified at 34 C.F.R. Pts. 300 and 301) ("[M]aintaining a child's placement in an educational

---

[4] *Lunceford* discussed the concept of "educational placement" in the context of applying the IDEA's "stay put" provision. The stay put provision requires a child to remain in the "then-current educational placement" during the pendency of an administrative hearing and any appeal. 20 U.S.C. § 1415(j).

9

program that is *substantially and materially* similar to the former placement is not a change in placement." (emphasis added)). In other words, there is no a change in "educational placement" under the IDEA where a student is placed in a new program where all the basic elements are fundamentally the same as the prior placement.

Furthermore, a change of location alone does not constitute a change in "educational placement" under the IDEA. "Educational placement" is a term of art. In *White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 379 (5th Cir. 2003), the Fifth Circuit held that "educational placement" under the IDEA means the "educational program—not the particular institution where that program is implemented." Similarly, the Second Circuit construed educational placement as "the classes, individualized attention and additional services a child will receive—rather than the 'bricks and mortar' of the specific school." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009); *see also A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, 372 F.3d 674, 682 (4th Cir. 2004) ("educational placement" under the IDEA refers to the general education program and environment, not to a location); *Johnson v. District of Columbia*, 839 F. Supp. 2d 173, 178 (D.D.C. 2012) (physical placement and educational placement are not synonymous); *Spilsbury v. District of Columbia*, 307 F. Supp. 2d 22, 26-27 (D.D.C. 2004) (the phrase "educational placement" encompasses "the whole range of service that a child needs; the term "cannot be read to only indicate which physical school building a child attends").[5]

---

[5] Plaintiffs erroneously cite *Laster v. District of Columbia*, 394 F. Supp. 2d 60 (D.D.C. 2005), for the proposition that "a change in physical location may be considered a change in educational placement." Pl. Mot. for Summ. J. at 11. Nowhere does *Laster* make such a statement. *Laster* merely cites cases defining educational placement as discussed here. *See Laster*, 394 F. Supp. 2d at 64-65 (citing *Bd. of Educ. of Cmty. High Sch. Dist. No. 218*, 103 F.3d 545, 548 (7th Cir. 1996) (explaining that "educational placement" falls somewhere between the physical school attended by the child and the goals of the IEP) and *Silsbury*, 307 F. Supp. 2d at 26-27 ("educational placement" encompasses the whole range of services the student needs, not just the physical school building)).

First, Plaintiffs have not pointed to a fundamental change in, or elimination of, any basic element of D.K.'s educational program as set forth in his IEP. The 2007 IEP set forth D.K.'s placement as "out of general education," AR at 11, and the 2012 IEP renewed this "out of general education" designation, *id*. at 335-46. There is no change in "educational placement" under the IDEA because D.K.'s new IEP is substantially and materially the same as the old IEP. 71 Fed. Reg. at 46,588-89. In the absence a fundamental change in or elimination of a basic element of D.K.'s educational program, *see Lunceford*, 745 F.2d at 1582, there has been no change in educational placement.

Plaintiffs insist that the special education services set forth in D.K.'s IEP should be implemented at McLean. Plaintiffs view McLean and Kingsbury as "at the opposite ends of the continuum of placements and services" and they argue that D.K.'s educational placement was improperly changed "from a mainstream setting where he has the ability to learn from and interact with non-disabled peers [McLean], to a full-time, self-contained special education setting with no access to non-disabled peers [Kingsbury]." Pl. Mot. for Summ. J. [Dkt. 7] at 11-12].

As explained above, the physical school alone does not constitute an "educational placement." D.K.'s educational placement consists of the instruction and services spelled out in his IEP. Plaintiffs argue that McLean and Kingsbury offer vastly different programs because McLean offers general education with access to non-disabled peers and Kingsbury does not. However, this distinction is not relevant to D.K.'s IEP. D.K.'s IEP requires all instruction and services to be provided to D.K. *outside* a general education setting. Thus, under the terms of the IEP, it does not matter that McLean also educates non-disabled students in a general education setting. D.K.'s IEP requires that he be educated outside the general education setting. The

11

recommended transfer from McLean to Kingsbury does not constitute a change in "educational placement" as the term is used in the IDEA.

Further, the District is barred from placing D.K. at McLean under the IDEA. The staff of McLean have indicated that the school does not implement IEPs. *See* AR at 789, 819-20. D.K. is entitled to a FAPE under the IDEA, and for a disabled student, a FAPE *requires* that the school system provide services in compliance with an IEP. *See* 20 U.S.C. § 1401(9). Because McLean cannot or will not implement D.K.'s IEP, the District cannot place D.K. there.[6] *See Johnson*, 839 F. Supp. 2d at 179 (a school district may not place a student at a school that cannot provide the services required by the student's IEP); D.C. Code § 38-2561.03(a) (a student with a disability may be placed only in a school that can implement the student's IEP).

In addition, the District may not place D.K. at McLean because it lacks a valid Certificate of Approval. D.C. Code § 38-2561.03 (no special education student may be placed in a private school that lacks a valid Certificate of Approval in accordance with D.C. Code § 38-2561.07, unless a court orders such placement); 5-A D.C. Mun. Regs. § 2844.1 (same). Plaintiffs point out that the D.C. Code permits a court to order placement at a school lacking a valid Certificate. However, this Court declines to order placement at McLean because the school has made it clear that it cannot/will not implement D.K.'s IEP. Placement there would be antithetical to the purpose of IDEA—it would deny D.K. a FAPE.

While McLean is not a proper placement, Kingsbury is. D.K.'s IEP—specialized instruction and services outside of the general educational setting—can be implemented at Kingsbury. Kingsbury also has a valid Certificate of Approval.

---

[6] It is unclear whether the staff at McLean are qualified to implement D.K.'s IEP. The District asked to review the certificates and qualifications for McLean's teachers, but McLean did not provide them. AR at 793-94. District employees sought to observe students at McLean (including D.K.) who are funded by the District, but McLean refused. *Id*. at 18-19.

### B. Least Restrictive Environment

Plaintiffs also argue that the Kingsbury placement violates the requirement that D.K. be placed in the "least restrictive environment." The IDEA provides that children with disabilities must be educated "to the maximum extent appropriate" with children without disabilities. 20 U.S.C. ¶ 1412(a)(2), (5). A disabled child is to be removed from the general education setting only if the nature or severity of his disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily. 34 C.F.R. § 300.114.

While the IDEA requires that students be educated in the least restrictive environment, D.K.'s IEP calls for full-time education outside of the general setting. The IEP did not specify that he should receive *any* instruction or services within the general education environment. McLean offers individualized instruction, but in a general education setting. Moreover, McLean cannot or will not implement D.K.'s IEP. Thus, even taking into consideration that D.K. should be placed in the least restrictive environment, McLean is not a possible placement. Kingsbury, on the other hand, offers the precise type of education specified in D.K.'s IEP—individual instruction in a special education setting.

### C. Transition Services

In addition to complaining about the transfer of D.K. from McLean to Kingsbury, Plaintiffs erroneously allege that the Hearing Officer erred by failing to consider the need for services to implement D.K.'s transition from McLean to Kingsbury; D.K. needed such services due to anxiety issues. The record belies this contention. Benjamin Persett, a DCPS employee in charge of monitoring placements in non-public schools, made repeated attempts to contact Plaintiffs in the summer of 2012 to effectuate D.K.'s smooth transition to Kingsbury. AR at 291.

Marlene Gustafson, the associate head of Kingsbury, testified that Kingsbury would work with D.K. and his parents to answer their questions and respond to their concerns, to allow D.K. to articulate his worries, to consider ways to address D.K.'s anxiety about a new school setting, and to identify compatible peers. *Id*. at 759-60. Ms. Gustafson indicated that Kingsbury would consider placing D.K. in courses in areas that are his proven areas of strength in order to build his confidence and sense of accomplishment. *Id*. at 760. The Hearing Officer considered this evidence, *id*. at 20, and concluded that "the staff at Kingsbury would take appropriate steps to ensure that the student's transition to Kingsbury would be done in a reasonable time and method to assist the student in making a successful transition," *id*. at 26.

### D. Knowledge of Witnesses

Plaintiffs argue that because the District staff and witnesses at the administrative hearing did not know D.K. personally, the Court should discount their testimony. First, it must be noted that Plaintiffs bear the burden of persuading the Court that the hearing officer was wrong. *Reid*, 401 F.3d at 521. Second, the Court must give "due weight" to the decision of the hearing officer and should afford some deference to the expertise of the hearing officer and the school officials. *See Rowley*, 458 U.S. at 206; *Lyons*, 829 F. Supp. at 419. Third and finally, the evidence shows that the testimony of the District staff was well-grounded. Mr. Persett, a DCPS monitor, monitored D.K. as part of his caseload since April 2011. AR at 788. D.K. was transferred to the caseload of Andrew Drummond, another DCPS monitor, in July 2012; Mr. Drummond indicated that he reviewed D.K.'s file and spoke to D.K. directly. *Id*. at 825-26. Ms. Gustafson, the Kingsbury associate head, reviewed D.K.'s admissions file, including disclosures and evaluations submitted on D.K.'s behalf. *Id*. at 789-90. The record reveals no lack of knowledge regarding this student.

## IV. CONCLUSION

Plaintiffs have not shown that the HOD was wrong because they neither offer nor point to any evidence in the record that would undermine its factual or legal conclusions. Because the District offered a FAPE to D.K. at Kingsbury and Plaintiffs rejected the offer by maintaining D.K.'s enrollment at McLean, Plaintiffs are not entitled to reimbursement for D.K.'s tuition at McLean. *See* 20 U.S.C. § 1412(a)(10)(C)(i) (a local educational agency is not required to pay for the cost of education at a private school if the agency made a FAPE available to the child and the parents chose to send the child elsewhere).

For the reasons stated above, the Court will deny Plaintiffs' Motion for Summary Judgment [Dkt. 7] and will grant the District of Columbia's Motion for Summary Judgment [Dkt. 11]. Judgment will be entered in favor of the District of Columbia. A memorializing Order accompanies this Opinion.

Date: October 2, 2013

/s/
ROSEMARY M. COLLYER
United States District Judge